Sheryl P. Giugliano
Michael S. Amato
Ruskin Moscou Faltischek, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-0190
(516) 663-6600
sgiugliano@rmfpc.com
mamato@rmfpc.com

*Proposed Counsel to Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| HAL LUFTIG COMPANY, INC., | |
| | Case No. 22-11617 (JPM) |
| Debtor. | |

-------------------------------------------------------------------X

| | |
|---|---|
| HAL LUFTIG COMPANY, INC., | |
| Plaintiff, | |
| | Adv. Pro. No.22_____(___) |
| v. | |
| FCP ENTERTAINMENT PARTNERS, LLC, | |
| Defendant. | |

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S
MOTION PURSUANT TO 11 U.S.C. §§ 362(a) AND 105(a): (I) TO
EXTEND THE AUTOMATIC STAY TO NON-DEBTOR HAL LUFTIG;
(II) FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION; (III) SETTING EMERGENCY HEARING DATE ON DEBTOR'S
MOTION; AND (IV) FIXING THE FORM AND MANNER OF NOTICE**

# TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ........................................................................................1

**STATEMENT OF FACTS** ..................................................................................................3

**PROCEDURE** ........................................................................................................................3

**ARGUMENT** ..........................................................................................................................4

**I.**    Extension of the Automatic Stay ................................................................................4

**II.**    The Automatic Stay Should be Extended to Mr. Luftig .......................................7

    **A.**    Mr. Luftig is Essential to the Debtor's Successful Reorganization .......................7

    **B.**    Mr. Luftig is Entitled to Indemnification from the Debtor .....................................8

    **C.**    The Debtor is the real Party in Interest, and the Stay Should be Extended to Mr. Luftig ..........................................................................................................9

**III.**    A Temporary Restraining Order and Preliminary Injunction Should be Entered Precluding FCP, its Officers, Directors, Members, Agents, Parents and Affiliates from Taking any Action to Enforce the Final Award and the Clerk's Final Judgment Against Mr. Luftig ........................................................................................13

    **A.**    This Court has the Authority to Enter the TRO and Preliminary Injunction Without Requiring the Debtor to Demonstrate the Traditional Factors Required for Injunctive Relief ..........................................................................................13

    **B.**    Debtor has Established the Traditional Factors Including Irreparable Harm, a Probability of Success on the Merits and that a Balance of the Hardships and Public Interest Weigh in Favor of the Entry of a TRO and Preliminary Injunction ..........................................................................................................15

        **1.** The Debtor has Established a Probability of Success on the Merits ...................16

        **2.** The Debtors will Suffer Irreparable Harm Absent Entry of the TRO and Preliminary Injunction ........................................................................................17

        **3.** Balance of the Hardships and Public Interest Weigh in Favor of the Entry of a TRO and Preliminary Injunction ........................................................................19

**STATEMENT PURSUANT TO RULE SDNY LBR 9077-1(b)** ...............................20

i

**NO ADEQUATE REMEDY AT LAW** ........................................................................................20

**NOTICE**       ........................................................................................................................20

**CONCLUSION** ........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.H. Robins*,
    321 F.3d 282 (2d Cir.2003) ................................................................... 5

*A.H. Robins Co. v. Piccinin*,
    788 F.2d 994 (4th Cir. 1986) ............................................................ 4, 5

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
    117 B.R. 789 (Bankr. S.D.N.Y. 1990) ................................................ 14

*Chord Assocs. LLC v. Protech 2003-D, LLC*,
    2010 WL 1257874 (E.D.N.Y. Mar. 25, 2010) ...................................... 4

*DeSouza v. Plusfunds Grp., Inc.*,
    2006 WL 2168478 (S.D.N.Y. Aug. 1, 2006) ........................................ 5

*Durr Mechanical Construction, Inc. v. I.K. Construction, Inc. (In re Durr Mechanical
    Construction, Inc.)*,
    604 B.R. 131 (Bankr. S.D.N.Y. 2019) .............................................. 5, 6

*Gray v Hirsch*,
    230 B.R. 239, 243 (S.D.N.Y.1999). ...................................................... 6

*Gregory Funding v. Ventura*,
    638 B.R. 499 (Bankr. E.D.N.Y. 2022) ................................................ 10

*In re Adelphia Comm. Corp*,
    298 B.R. 49 (S.D.N.Y. 2003) ............................................................. 14

*In re Adelphia Communications Corp.*,
    302 B.R. 439 (2003) ............................................................................ 14

*In re Baldwin-United Corp. Litig.*,
    765 F.2d 343 (2d Cir. 1985) ................................................................. 4

*In re Calpine Corp.*,
    354 B.R. 45 (2006) ............................................................................. 14

iii

*In re FPSDA I, LLC,*
  2012 WL 6681794*6 (Bankr. EDNY 2012) ................................................... 16

*In re Metal Center, Inc.,*
  31 B.R. 458 (Bankr. D. Conn. 1983) ........................................................... 6

*In re Neuman,*
  71 B.R. 567 (S.D.N.Y. 1987) ...................................................................... 14

*In re United Health Care Org.,*
  210 B.R. 228 (S.D.N.Y. 1997) ................................................................ 6, 14

*In re: Johns-Manville Corp.,*
  91 B.R. 225 (Bankr. S.D.N.Y. 1998) ........................................................ 14

*LaSala v. Needham & Co., Inc.,*
  399 F.Supp.2d 421 (S.D.N.Y.2005) ............................................................ 6

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca,* LLC,
  2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014) ............................................. 6

*Robert Plan Corp. v. Liberty Mut. Ins. Co.,*
  No. 2010 WL 1193151 (E.D.N.Y. Mar. 23, 2010) ........................................ 5

*Teachers Ins. & Annuity Ass'n of Am. v. Butler,*
  803 F.2d 61 (2d Cir. 1986) .......................................................................... 4

*Thomson Kernaghan & Co. v. Glob. Intellicom, Inc.,* No.,
  2000 WL 640653 (S.D.N.Y. May 17, 2000) ................................................ 6

*Variable–Parameter Fixture Development Corp. v. Morpheus Lights, Inc.,*
  945 F.Supp. 603 (S.D.N.Y.1996) ............................................................. 14

## STATUTES

11 U.S.C. §§ 362(a) and 105(a) ............................................................. 1, 4, 6
28 U.S.C. §157 .............................................................................................. 3
28 U.S.C. §§ 157(a) and 1334(b) ................................................................. 4
Bankruptcy Code § 541(a)(1) ....................................................................... 4
Bankruptcy Code §§ 1107(a) and 1108 ........................................................ 3
Pub. L. No. 116-54 § 5, 133 Stat. 1079, 1087 ............................................. 10
Bankruptcy Code Section 105 ................................................................. 4, 14
New York Business Corporation Law Section 722(a) .................................... 9
Bankruptcy Code §362 ......................................................................... passim
Bankruptcy Code §§ 105(a) and 362 ................................................ 1, 3, 13, 14

## **RULES**

Federal Rule of Civil Procedure 65(a)(1) .................................................................................. 15
Rule 62 of the Federal Rules of Civil Procedure ....................................................................... 18

Hal Luftig Company, Inc. (the "Debtor"), the above-captioned debtor and debtor-in-possession, respectfully submits this memorandum of law, together with the Declaration of Michael S. Amato dated December 1, 2022 and filed simultaneously herewith (the "Amato Declaration"), and the *Declaration of Hal Luftig Under Local Rule 1007-2 in Connection with Chapter 11 Filing, and Local Rule 9077-1 in Support of Certain "First Day" Motions* dated November 30, 2022 (the "Luftig Declaration") in support of its motion (the "Motion"), pursuant to §§ 105(a) and 362 of title 11, United States Code (the "Bankruptcy Code") requesting: (i) an order extending the automatic stay pursuant to §362 of the Bankruptcy Code to Hal Luftig ("Mr. Luftig"); (ii) a temporary restraining order ('TRO") and preliminary injunction ("Preliminary Injunction") precluding FCP Entertainment Partners, LLC ("FCP") and its officers, directors, members, agents, parents and affiliates from any and all efforts and actions to enforce the Final Award[1], the Clerk's Final Judgment and or any judgment or judgments entered with respect to the Final Award and the Clerk's Final Judgment; (iii) scheduling a hearing or hearings to consider entry of the TRO and Preliminary Injunction; and (iv) fixing the form, manner and extent of notice of the hearing(s) to consider the Motion.

## PRELIMINARY STATEMENT

The automatic stay under Bankruptcy Code § 362 must be extended to Mr. Luftig during this Subchapter V small business reorganization case because he is the backbone of the Debtor's decades of success, and failure to do so immediately would jeopardize the Debtor's chances of a successful reorganization.

The Debtor commenced this voluntary Subchapter V small business reorganization case in response to the entry of a final judgment in the amount of approximately $2.6 million in FCP's

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint filed December 1, 2022, and the Luftig Declaration.

favor, confirming an arbitration award which held the Debtor and Mr. Luftig jointly and severally liable for breach of contract despite the fact that Mr. Luftig was not a party to the underlying agreement.  Only Mr. Luftig filed a notice of appeal of the judgment.  During the pendency of the appeal, the Debtor expects that FCP will pursue judgment enforcement collection efforts against Mr. Luftig, a non-debtor.

Extension of the stay to Mr. Luftig is warranted because his work for the Debtor, relationships and reputation in the entertainment industry are the bedrock of the Debtor's success, and his efforts must be focused on the Debtor's existing projects and identifying and pursuing new opportunities stemming from the Debtor's legacy projects which would result in greater revenues for the Debtor's estate. The Debtor has only two (2) other employees besides Mr. Luftig, so his undivided efforts are a necessary component to the Debtor's successful reorganization.  (Luftig Declaration, ¶12).

In addition, Mr. Luftig has indemnification rights under the Debtor's applicable corporate organizational documents and New York State law.  To that end, Mr. Luftig's interests and the Debtor's interests are aligned. Based upon these aligned interests (which FCP also argued existed during the Arbitration – *i.e.,* that the Debtor and Mr. Luftig were united in interest) enforcement of the Final Award and Clerk's Final Judgment against the Mr. Luftig will have significant adverse economic consequences to the Debtor's estate, and inhibit and impede the Debtor's reorganization efforts in the pending Subchapter V small business case.

As set forth below, special or unusual circumstances exist where there is such identity of interest between the Debtor and Mr. Luftig that the Debtor is the real party in interest and any and all efforts to enforce the Final Award and/or the Clerk's Final Judgment against Mr. Luftig

constitutes enforcement efforts against the Debtor.

In light of the urgency in which the requested relief is required (the 30 day stay under Rule 62 expires December 2, 2022), the Court should enter an order or orders, extending the automatic stay pursuant to §362 to Mr. Luftig and granting a TRO and Preliminary Injunction precluding FCP and its officers, directors, members, agents, parents and affiliates from any and all efforts and actions to enforce the Final Award, the Clerk's Final Judgment and or any judgment or judgments entered with respect to the Final Award and the Clerk's Final Judgment.

And, while the Debtor respectfully submits that it has provided the Court with the facts necessary to demonstrate the traditional factors required for injunctive relief, this Court has the authority to, and respectfully should, enter the TRO and Preliminary Injunction.

## **STATEMENT OF FACTS**

The facts of this matter are set forth in the Complaint filed December 1, 2022 ("Complaint") and the Luftig Declaration and will not be repeated here but will be referred to below as appropriate. A true and correct copy of the Complaint is attached to the Amato Declaration as Exhibit " A".

## **PROCEDURE**

On December 1, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in this Court, and elected to proceed under Subchapter V of the Bankruptcy Code in a small business reorganization case.

The Debtor is authorized to continue to operate and manage its business and property as a debtor in possession under Bankruptcy Code §§ 1107(a) and 1108.  This proceeding arises under

Bankruptcy Code §§ 105(a) and 362(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157. This Court has subject matter jurisdiction over this proceeding because it is "related to" the Debtor's Subchapter V case within the meaning of 28 U.S.C. §§ 157(a) and 1334(b).

## ARGUMENT

### I.    Extension of the Automatic Stay

Bankruptcy Code § 362(a) automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Bankruptcy Code § 541(a)(1) states that property of the estate is "comprised of . . . all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 362.

Non-debtors "can claim the protection of a debtor's stay in 'unusual circumstances.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *see also Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (noting that bankruptcy courts have extended the automatic stay to non-debtors "if it contributes to the debtor's efforts to achieve rehabilitation" and that district courts may similarly "utilize their discretionary power to stay proceeding in the interest of justice and in control of their dockets"); *In re Baldwin-United Corp. Litig*., 765 F.2d 343, 348 (2d Cir. 1985) (stating that bankruptcy courts' general equitable powers under section 105 of the Bankruptcy Code are "broader than the automatic stay provisions of section 362").

An "unusual situation" warranting extension of the section 362 automatic stay to non-debtor defendants "arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against

the third-party defendant will in effect be a judgment or finding against the debtor." *Chord Assocs. LLC v. Protech* 2003-D, LLC, 2010 WL 1257874, at *3 (E.D.N.Y. Mar. 25, 2010) (quoting *A.H. Robins*, 788 F.2d at 999).

The *Robbins* Court explained that, in order to extend the automatic stay to non-debtor third parties, there must be "unusual circumstances." *Id.* at 999. The Court further explained:

> This "unusual situation," it would seem, arises when there is such identity between the debtor and the third–party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor.

*Id.* (emphasis added).

The crux of this exception is whether there are "strong ties" between the non-debtor and the debtor such that a judgment against the non-debtor "will have an immediate adverse economic consequence for the debtor's estate" or the liability of the non-debtor will be imputed to the debtor by operation of law. *A.H. Robins* 321 F.3d 282, 287 (2d Cir.2003); *see also Robert Plan Corp. v. Liberty Mut. Ins. Co*., No. 2010 WL 1193151, at *3 (E.D.N.Y. Mar. 23, 2010); *DeSouza v. Plusfunds Grp., Inc*., 2006 WL 2168478, at *2 (S.D.N.Y. Aug. 1, 2006).

Courts will extend the automatic stay to non-debtors in cases where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. et al. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). *See also Durr Mechanical Construction, Inc. v. I.K. Construction, Inc. (In re Durr Mechanical Construction, Inc.),* 604 B.R. 131, 137 (Bankr. S.D.N.Y. 2019) (holding extension of stay to non-debtors was warranted where continuation of the non-bankruptcy litigation would "have an immediate, adverse economic impact on the estate and its unsecured creditors").

5

New York bankruptcy and federal courts have in numerous cases extended the automatic stay to non-debtor third parties. *See*, *e.g.*, *In re Durr Mechanical Construction, Inc.,* 604 B.R. 131, 137 (Bankr. S.D.N.Y. 2019); *In re United Health Care Org.*, 210 B.R. 228, 233 (S.D.N.Y. 1997) (staying claims against debtor's officers and noting that when there is "identity between the debtor and the third party defendants," such as when the third party is "entitled to absolute immunity by the debtor on account of any judgment that might result against it in the case," the action against the third party may be enjoined).

Courts in this District have extended the automatic stay to non-debtor officers and principals of debtor corporations where the stayed actions would have "…posed a serious threat to the debtors' reorganization efforts or otherwise inhibited resolution of the debtor's bankruptcy." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca*, LLC, 2014 WL 4783008, at *3 (S.D.N.Y. Sept. 25, 2014) (citing Gray, 230 B.R. at 243).

In order for the unusual circumstances exemption to be warranted, however, the purpose served by extending the automatic stay to a non-debtor must also be consistent with the purpose of the stay itself. *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y.1999). Courts in the Second Circuit recognize that the automatic stay under Section 362(a) is intended to "permit the debtor to organize his or her affairs without creditor harassment and to allow orderly resolution of all claims." MG.

The movant bears the burden of demonstrating the need for such a stay. *See LaSala v. Needham & Co., Inc*., 399 F.Supp.2d 421, 427 (S.D.N.Y.2005).[2]

---

[2] The Debtor recognizes that authority exists such that where a co-defendant is independently liable, or where the non-debtor's liability rests upon his own breach of a duty, the court may determine that the automatic stay should not be extended to a non-debtor third party. *Thomson Kernaghan & Co. v. Glob. Intellicom, Inc*., No. 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000); *In re Metal Center, Inc*., 31 B.R.

II.     **The Automatic Stay Should Be Extended to Mr. Luftig**

A.  **Mr. Luftig is Essential to the Debtor's Successful Reorganization**

Enforcement of the Final Award and Clerk's Final Judgment against Mr. Luftig will have significant adverse economic consequences for the Debtor's estate, and inhibit and impede the Debtor's reorganization efforts in the pending Subchapter V reorganization case.

Mr. Luftig is an essential component to the Debtor's successful reorganization. His personal efforts, relationships and reputation in the entertainment industry are the bedrock of the Debtor's business, and his efforts and attention must be focused on working on the Debtor's existing projects and identifying and pursing new opportunities which might flow from the Debtor's legacy productions to generate revenue to fund a plan of reorganization.  (Luftig Declaration, ¶11).

For example, Kinky Boots recently opened in Tokyo and Seoul, and the film rights to Kinky Boots that might be exploited would flow through Kinky Boots LLC, the "mother company" of the Kinky Boots production.[3]  (Luftig Declaration, Exhibits A and B).  Mr. Luftig did extensive press and promotion for those Asian revivals, and the Debtor believes that Mr. Luftig's work contributed to the success of those projects.  In addition, the production company for Plaza Suite starring Matthew Broderick and Sarah Jessica Parker, Suite 719 LLC, is

---

458, 462 (Bankr. D. Conn. 1983)).  As set forth more fully herein, those cases are not applicable to the facts and circumstances of this matter.

[3] With respect to the Kinky Boots production, Kinky Boots LLC as the "mother company," is the producing entity for Kinky Boots the musical on Broadway, receives and distributes all profits in connection with the production, enters into license agreements for future related projects, and serves as a parent company or affiliate for related productions.  The Debtor is the "General Partner" of Kinky Boots LLC and owns 15.7315% of the interests in Kinky Boots LLC.   Under the Final Award, the arbitrator found that in addition to compensatory damages, FCP is entitled to 55% of the profits generated from the Debtor's 15.7315% interest in Kinky Boots LLC.

considering launching shows in London and Los Angeles.[4] Both of those productions would require significant time and commitment from Mr. Luftig with respect to hands-on producing and marketing efforts. The Debtor has only two (2) employees other than Mr. Luftig. Therefore, Mr. Luftig's time and attention are essential to the Debtor's successful reorganization. (Luftig Declaration, ¶12).

If Mr. Luftig is forced to defend himself daily in connection with FCP's judgment enforcement collection efforts, he cannot possibly also focus on the Debtor's continued success and structure for a plan to pay its creditors. (Luftig Declaration, ¶59).

Absent the TRO and Preliminary Injunction, it will be extremely difficult for Mr. Luftig to focus on the Debtor's potential revenue-generating projects, because he will instead be forced to deal on a daily basis with FCP's ongoing and continuous collection efforts. (Luftig Declaration, ¶59). If Mr. Luftig is forced to spend most of his time dealing with judgement enforcement collection efforts by FCP – *e.g.,* figuring out how to live without access to funds and explaining to business partners in the entertainment industry why his personal funds are frozen and why he cannot attend meetings or rehearsals – it is difficult to imagine a scenario where the Debtor successfully reorganizes as a small business debtor.

**B.  Mr. Luftig is Entitled to Indemnification from the Debtor**

There exists an identity between the Debtor and Mr. Luftig that the Debtor may be said to be the true judgement debtor, and enforcement of the Final Award and Clerk's Final Judgment against Mr. Luftig will have significant adverse economic consequences for the Debtor's estate.

---

[4] Suite 719 LLC is the producing entity for the Broadway revival of Neil Simon's Plaza Suite starring Matthew Broderick and Sarah Jessica Parker, and will serve as the "mother company" for all future subsidiaries. The Debtor is the General Partner for Suite 719 LLC, and owns 11.5% of the interests in Suite 719 LLC.

Further, Mr. Luftig is entitled to indemnification from the Debtor as a result of any and all enforcement efforts by FCP, including attorneys' fees and expenses, under applicable corporate organizational documents and New York State law.

Section 722(a) of New York Business Corporation Law provides:

> (a) A corporation may indemnify any person made, or threatened to be made, a party to an action or proceeding (other than one by or in the right of the corporation to procure a judgment in its favor), whether civil or criminal, including an action by or in the right of any other corporation of any type or kind, domestic or foreign, or any partnership, joint venture, trust, employee benefit plan or other enterprise, which any director or officer of the corporation served in any capacity at the request of the corporation, by reason of the fact that he, his testator or intestate, was a director or officer of the corporation, or served such other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise in any capacity, against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding, or any appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in, or, in the case of service for any other corporation or any partnership, joint venture, trust, employee benefit plan or other enterprise, not opposed to, the best interests of the corporation and, in criminal actions or proceedings, in addition, had no reasonable cause to believe that his conduct was unlawful.

NY BCL § 722(a) (emphasis added).

As set forth in the Luftig Declaration, Mr. Luftig is entitled under the Debtor's applicable corporate documents to indemnification for all damages, including reasonable attorney's fees, resulting from the Final Award and Clerk's Final Judgment. (Luftig Declaration, ¶62).

### C. The Debtor is the Real Party in Interest, and the Stay Should be Extended to Mr. Luftig

Special or unusual circumstances exist here, because there is such identity of interest between the Debtor and Mr. Luftig that the Debtor is the real party in interest and any and all efforts to enforce the Final Award and/or the Clerk's Final Judgment against Mr. Luftig constitutes enforcement efforts against the Debtor.

As set forth above, Mr. Luftig is the backbone of the Debtor's business, and the Debtor relies upon Mr. Luftig's reputation in the live theater production industry in order to secure new projects from legacy productions to generate revenue. Mr. Luftig individually attends meetings and rehearsals and participates in marketing efforts for legacy productions all over the world. Moreover, Mr. Luftig has indemnification rights against the Debtor which unite their interests and render the Debtor the true judgment debtor. Allowing FCP to pursue judgment collection and enforcement efforts against Mr. Luftig during this Subchapter V small business reorganization would surely disrupt the reorganization process, hinder the Debtor's ability to propose a plan, and irreparably harm the Debtor's business reorganization prospects.

This is a Subchapter V small business reorganization, "[d]esigned to provide a more cost-effective and streamlined option for small businesses to reorganize, the SBRA created a new Subchapter V within Chapter 11 of the Bankruptcy Code." *Gregory Funding v. Ventura,* 638 B.R. 499 (Bankr. E.D.N.Y. 2022) (citing Small Business Reorganization Act of 2019, Pub. L. No. 116-54 § 5, 133 Stat. 1079, 1087). The Debtor elected to proceed in a Subchapter V small business reorganization case to benefit from exactly those aspects (cost-effective and streamlined) and, therefore, does not intend to be in this bankruptcy case for an extended period of time. But, it is a necessary and important process that the Debtor has the right to pursue, and

the Debtor will be prejudiced if the leader of its business is distracted by daily judgment enforcement collection efforts.

Further evidence that the Debtor's and Mr. Luftig's interests are aligned, are FCP's own arguments during the course of the Arbitration and the District Court Action: FCP repeatedly argued that the Debtor and Mr. Luftig were united in interest, and sought to impose liability upon Mr. Luftig for the Debtor's obligations under the 2007 Agreement.  For example, upon the issuance of the Interim Award, counsel for the Debtor and Mr. Luftig issued a "Question for Clarification" to the Arbitrator.  At the Arbitrator's direction, the parties sent a series of email briefs to the Arbitrator laying out their positions regarding the Question for Clarification.

In its email brief on the issue dated October 26, 2021, FCP argued that "**The Agreement is between [the Debtor] and FCP, and not Luftig individually."**  To the contrary, FCP later argued that paragraph 5 of the Inducement Letter provides "to the extent that [the Debtor] fails to perform any portion of the Agreement, Luftig is substituted as a direct party for purposes of the breach.  As a result of the inducement letter, both [the Debtor] and Luftig are jointly and severally liable for the breach." A true and correct copy of the October 26, 2021 Email is attached to the Amato Declaration as Exhibit "B".

In a second email dated October 29, 2021, FCP argued that, "[t]he Inducement Letter is signed to prevent FCP from losing the benefit of the bargain (and prohibiting Luftig from dissolving [the Debtor] and therefore being effectively released from the agreement), and protecting FCP's rights in the event [the Debtor] failed." A true and correct copy of the October 29, 2021 Email is attached to the Amato Declaration as Exhibit " C".

11

FCP repeated these arguments in the District Court Action.  In its *Omnibus Memorandum of Law in Further Support of FCP Entertainment Partners, LLC's Petition to Confirm Arbitration Award and Opposition to Hal Luftig's Petition to Vacate Arbitration Award* dated June 13, 2022 filed in the District Court Action (the "FCP Omnibus Memorandum"), FCP repeatedly cited to the Final Award, arguing:

> After a comprehensive analysis of the 2007 Agreement and the evidence presented at the hearing, the Arbitrator concluded that,
>
> It appears that it was clear to Luftig that [the Debtor] had a legal obligation to pay [FCP] his 55% share of net income from Kinky Boots paid through the Waterfall Provisions of the Paragraph 6 of the 2007 Agreement. It is clear to this Arbitrator that the Respondents are legally obligated to do so. **By failing to do so, I find that the Respondents have breached the Agreement.**

(FCP Omnibus Memorandum, Amato Declaration Ex. "D", p.13)

FCP then argued that the arbitrator correctly held that Mr. Luftig and the Debtor were jointly and severally liable for breach of the 2007 Agreement stating:

> In response, the Arbitrator invited a response from FCP, which was received on October 26, 2021. (Action No. 1, Doc.  13-12). FCP explained two theories supporting the Interim Award's finding of joint and several liability. First, attached to the 2007 Agreement is the "Inducement Letter" signed by Luftig.  (Action No. 1, Doc. 5-2 p. 13). FCP contended that the purpose of this letter agreement was to ensure that Luftig perform the personal services he was obligated to perform under the 2007 agreement between [the Debtor] and FCP. In the Letter, Luftig confirmed that "If [the Debtor] should be dissolved or should otherwise cease to exist or for any reason whatsoever should fail, be unable, neglect or refuse to perform and observe each and all of the conditions of the Agreement requiring performance or compliance on its part, at your election, I shall be deemed substituted as a direct party to the Agreement in the place and stead of Lender." (Id. at ¶5). Thus, to the extent that [the Debtor] failed to perform any portion of the Agreement, Luftig is substituted as a direct party for purposes of

12

the breach. As a result of the Inducement Letter, both [the Debtor]
and Luftig are jointly and severally liable for the breach.

(FCP Omnibus Memorandum, Amato Declaration Ex. " D", pp.15-16)

Having repeated these arguments in both the Arbitration and District Court Action, FCP

now is precluded from arguing that there is not such identity of interest between the Debtor and

Mr. Luftig that the Debtor is the real party in interest and any and all efforts to enforce the Final

Award and/or the Clerk's Final Judgment against Mr. Luftig constitutes enforcement efforts

against the Debtor.

To prevent this circumvention of the Bankruptcy Code, the automatic stay should be

extended to non-debtor third party Mr. Luftig.

Based upon the foregoing, this Court should enter judgment declaring that the automatic

stay applies to FCP's efforts to enforce the Final Award and Clerk's Final Judgment against Mr.

Luftig, and extend the automatic stay pursuant to §362 of the Bankruptcy Code to Mr. Luftig.

### III.   A Temporary Restraining Order and Preliminary Injunction Should be Entered Precluding FCP, its Officers, Directors, Members, Agents, Parents and Affiliates from Taking any Action to Enforce the Final Award and the Clerk's Final Judgment Against Mr. Luftig

Pursuant to Bankruptcy Code § 105(a), the Debtor requests that the Court enter

temporary, preliminary and final orders enjoining and staying FCP and its officers, directors,

members, agents, parents and affiliates from any and all efforts and actions to enforce the Final

Award, the Clerk's Final Judgment and or any judgment or judgments entered with respect to the

Final Award and the Clerk's Final Judgment against Mr. Luftig.

### A.   This Court has the Authority to Enter the TRO and Preliminary Injunction Without Requiring the Debtor to Demonstrate the Traditional Factors Required for Injunctive Relief

This Court has discretion to enter the TRO and preliminary injunction without requiring the Debtor to demonstrate the traditional factors normally required for injunctions such as inadequate remedy at law or irreparable harm. *See In re Adelphia Comm. Corp*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ("The proof required to extend the stay is not as rigorous as that normally required for injunctions. . . . Because the 'basic purpose of [§105(a)] is to enable the court to do whatever necessary to aid its jurisdiction, *i.e.,* anything arising in or relating to a bankruptcy case) (quoting *In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y. 1987) (internal citations omitted)); *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789 (Bankr. S.D.N.Y. 1990).

It is well settled that §105(a) of the Bankruptcy Code permits bankruptcy courts to extend the automatic stay to "enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts." *In re Adelphia Communications Corp.*, 302 B.R. 439, 449 (2003). Indeed:

> Section 105 injunctions are granted in these circumstances because one of the overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their creditors to increase the chances of a successful reorganization. Because non-debtors do not fall within the protection of the automatic stay, at times section 105 must be invoked on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them. In other words, "Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code."

*In re Calpine Corp.*, 354 B.R. 45 (2006), *citing*: *In re United Health Care Organization*, 210 B.R. at 233 *quoting Variable–Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F.Supp. 603, 608 (S.D.N.Y.1996).

FCP's efforts to enforce the Final Award and/or Clerk's Final Judgment would defeat or impair this Court's jurisdiction with respect to the Debtor's Subchapter V small business reorganization case. *In re: Johns-Manville Corp.*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1998). As

set forth above and in the Luftig Declaration, absent an extension of the automatic stay to Mr. Luftig, he will be forced to deal with judgment enforcement collection efforts by FCP in a way that will disrupt his daily life and distract him from his necessary work for the Debtor.   Mr. Luftig's attention must be dedicated to identifying and developing future projects that stem from the Debtor's legacy productions and will generate revenue for the Debtor's estate to fund a plan. Furthermore, Mr. Luftig has indemnification claims against the Debtor grounded in applicable state law and under the Debtor's applicable corporate documents, which include reasonable attorney's fees.  Accordingly, Mr. Luftig and the Debtor have aligned interests and the Debtor is the true judgment debtor responsible for satisfying FCP's judgment.   Indeed, only Mr. Luftig is pursuing an appeal of the judgment (adding to his indemnification claim against the Debtor, which would disappear if the judgment is satisfied under the Debtor's plan of reorganization).

Accordingly, this Court should exercise its jurisdiction in this Subchapter V reorganization case, and enter a TRO and Preliminary Injunction enjoining and staying FCP and its officers, directors, members, agents, parents and affiliates from any and all efforts and actions to enforce the Final Award, the Clerk's Final Judgment and or any judgment or judgments entered with respect to the Final Award and the Clerk's Final Judgment against Mr. Luftig.

**B. The Debtor has Established the Traditional Factors Including Irreparable Harm, a Probability of Success on the Merits and that a Balance of the Hardships and Public Interest Weigh in Favor of the Entry of a TRO and Preliminary Injunction**

Although the Court has jurisdiction to enter the TRO and Preliminary Injunction without the Debtor establishing the traditional factors, the Debtor is able to do so.

Federal Rule of Civil Procedure 65(a)(1), incorporated by FRBP 7065, provides for the issuance of a preliminary injunction, on notice to the adverse party.

In the Second Circuit, the party seeking a preliminary injunction must show:

(1) That there is a sufficient probability that it will succeed in the underlying litigation (the "Probability Test"). In the Second Circuit, the "Probability Test" can be met by showing either:

    (A) That the movant has a likelihood of success on the merits of the pending adversary proceeding, or

    (B) Both
        (i) That there is a "sufficiently serious question" going to the merits of the pending adversary proceeding to make them a fair ground for litigation, and

        (ii) That the balance of hardships tips "decidedly in the [movant's] favor."

(2) In addition to satisfying the "probability of success" test, the movant must also show that it will suffer "irreparable injury" if a preliminary injunction is not granted.(internal citations omitted).

The question of whether to grant a preliminary injunction also requires that the Court ensure that the "public interest would not be disserved" by the issuance of the preliminary injunction. (internal citations omitted).

*In re FPSDA I, LLC, et. al.,* 2012 WL 6681794*6 (Bankr. EDNY 2012).

**1.  The Debtor has Established a Probability of Success on the Merit**s

As set forth in this Motion, the Complaint and in the Luftig Declaration, the Debtor has established a likelihood of success on the merits with respect to the issuance of the TRO and Preliminary Injunction.

The Debtor has established that "special" or "unusual circumstances" warranting extension of the stay to Mr. Luftig and the entry of the TRO and Preliminary injunction exist,, including:

    a.  An identity between the Debtor and Mr. Luftig such that the Debtor is the true judgement debtor, and enforcement of the Final Award and Clerk's Final Judgment against the Mr. Luftig will have significant adverse economic consequences for the Debtor's estate. (Complaint, Amato Declaration Exhibit A ¶50).

    b.  Mr. Luftig is entitled to indemnification from the Debtor as a result of any and all enforcement efforts by FCP, including attorneys' fees and expenses, under applicable corporate organizational documents and New York State law. (Luftig Declaration, ¶62).

    c.  Absent an extension of the automatic stay to Mr. Luftig, he will be forced to deal with judgment enforcement collection efforts by FCP thereby jeopardizing the Debtor's ability to reorganize and successfully emerge from Chapter 11.   Mr. Luftig's professional reputation and his contacts in the live theater production industry are the foundation for the Debtor's success, and his attention must be dedicated to identifying and developing future projects that stem from the Debtor's legacy productions. (Luftig Declaration, ¶11).

    d.  Permitting FCP to pursue judgment collection and enforcement efforts against Mr. Luftig during this Subchapter V small business reorganization would surely disrupt the reorganization process, hinder the Debtor's ability to propose a plan, and irreparably harm the Debtor's business reorganization prospects. (Luftig Declaration, ¶59).

Based upon the foregoing, the Debtor has established a likelihood of success on the merits with respect to the entry of a TRO and preliminary Injunction.

### 2. The Debtor will Suffer Irreparable Harm Absent Entry of the TRO and Preliminary Injunction

The Final Award assigns damages to the breach of contract claim in the amount of $2,638,925.78, to be born jointly and severally by the Debtor and Mr. Luftig. (Complaint, Amato Declaration, Ex. " A" ¶35).

On November 2, 2022, the District Court entered the Clerk's Final Judgment, but rejected FCP's proposed Abstract of Judgment as deficient and premature, and closed both related cases before the District Court. (Complaint, Amato Declaration, Ex. "A" ¶41).

On November 15, 2022, FCP submitted a Proposed Judgment in his action to confirm the Final Award, which was reviewed and approved by the District Court as to form on November 16, 2022. (Complaint, Amato Declaration, Ex. " A"¶42).

On November 22, 2022, FCP filed a letter Motion to reopen the case in which it moved to confirm the Final Award to address FCP's motion for entry of an amended final judgment. (Complaint, Amato Declaration, Ex. "A" ¶43).

On November 29, 2022, FCP filed another motion to alter the Clerk's Judgment in a clear effort to avoid triggering a new 30 day stay under Rule 62 which would occur if the District Court entered a new or amended judgment. (Complaint, Amato Declaration, Ex. "A" ¶45)

FCP clearly intends to immediately (upon the expiration of the stay imposed by Rule 62 of the Federal Rules of Civil Procedure, on or about December 2, 2022), proceed with any and all judgment enforcement and collection efforts against the Debtor and Mr. Luftig personally. (Luftig Declaration,  ¶60).

If the stay is not extended, and the TRO and Preliminary Injunction are not entered, the Debtor will be protected under Section 362 of the Bankruptcy Code, but Mr. Luftig will not and as stated above, he will be forced on a daily basis to deal with judgment enforcement collection efforts.  This disruption will serve only to distract Mr. Luftig, and irreparably harm the Debtor's chance of a successful reorganization and emergence from this Subchapter V small business reorganization. In addition, it will increase Mr. Luftig's claims against the Debtor's estate, which clearly is not in the best interests of the Debtor's estate or its creditors.

Based upon the foregoing, the Debtor will suffer irreparable harm absent the entry of the TRO and Preliminary Injunction.

18

### 3. Balance of the Hardships and Public Interest Weigh in Favor of the Entry of a TRO and Preliminary Injunction

The balance of hardships weigh decidedly in the Debtor's favor of entry of the TRO and Preliminary Injunction.

Mr. Luftig must be free from enforcement efforts so that he may focus on the Debtor's reorganization and successful emergence from this Subchapter V small business reorganization. (Luftig Declaration, ¶59).

The Debtor's success has been based upon Mr. Luftig's reputation and hard work in the live theater industry.   The Debtor's business opportunities and successful productions stem from Mr. Luftig's reputation and business contacts.    Therefore, he is an essential component to the Debtor's successful reorganization. If Mr. Luftig is forced to defend himself in connection with FCP's judgment enforcement collection efforts, he cannot also focus on the Debtor's continued success and structure a plan to pay its creditors. (Luftig Declaration, ¶11).

Absent entry of the TRO and Preliminary Injunction, it will be extremely difficult for Mr. Luftig to give the Debtor and its business prospects for new opportunities stemming from legacy projects the attention they require, because he will be forced to deal on a daily basis with FCP's ongoing and continuous judgment enforcement efforts.  (Luftig Declaration, ¶59).

The public interest clearly will be served by issuing the TRO and Preliminary Injunction. The 2007 Agreement was between two (2) entities, both familiar with the theatre industry.  The business purpose of the Debtor was to engage in the business relationship, while shielding Mr. Luftig from potential personal liability.  The Final Award ignores the Debtor's status, as well as the purpose of business organizations.

19

Based upon the foregoing, the Debtor has established: (i) a likelihood of success on the merits with respect to the issuance of the Preliminary Injunction; (ii) that the Debtor will suffer irreparable harm absent the entry of the TRO and Preliminary Injunction; and (iii) the balance of hardships weigh decidedly in Debtor's favor and the public interest clearly will be served by the requested relief.  Accordingly, the Court should enter the TRO and Preliminary Injunction.

### **STATEMENT PURSUANT TO RULE SDNY LBR 9077-1(b)**

No prior request for the same or similar relief has been made to this or any other court.

### **NO ADEQUATE REMEDY AT LAW**

The Debtor has no adequate remedy at law, because only an extension of the automatic stay pursuant to §362 of the Bankruptcy Code and a temporary, preliminary and permanent injunction staying enforcement of the Final Award and Clerk's Final Judgment as against Mr. Luftig will provide the appropriate relief required under these circumstances.

### **NOTICE**

The Debtor will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (i) FCP; (ii) the Office of the United States Trustee for Region 2; (iii) the Subchapter V trustee, once appointed; (iv) the Debtor's 20 largest unsecured creditors; (v) Debtor's banks; (vi) Mr. Luftig's counsel; (vii) any such other party entitled to notice pursuant to SDNY LBR Rule 9013–1(b) o or that requests notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

The automatic stay under Bankruptcy Code § 362 must be extended to Mr. Luftig during this Subchapter V small business reorganization case because he is the lifeblood of the company and as the sole shareholder, officer and director, has valid indemnification claims against the Debtor's estate. Based upon the Debtor's and Mr. Luftig's aligned interests, and the potential adverse economic consequences for the Debtor's estate absent extension of the stay to Mr. Luftig, this Court should enter the proposed TRO and Preliminary Injunction.

**WHEREFORE,** for the reasons set forth above the Debtor respectfully requests that this Court:

    i.    Enter a judgment declaring that the automatic stay is applicable to FCP's efforts to enforce the Final Award against Mr. Luftig and extending the automatic stay §362 of the Bankruptcy Code to Mr. Luftig;

    ii.    Enter the TRO and Preliminary Injunction enjoining and staying FCP and its officers, directors, members, agents, parents and affiliates from any and all efforts and actions to enforce the Final Award, the Clerk's Final Judgment and or any judgment or judgments entered with respect to the Final Award and the Clerk's Final Judgment against Mr. Luftig;

    iii.    Scheduling a hearing or hearing(s) to consider the entry of the TRO and Preliminary Injunction;

    iv.    Fixing the form and manner of notice of the hearing(s) and

    v.    such other and Further relief as this Court deems just and proper.

Dated:  Uniondale, New York
       December 1 , 2022

                                 RUSKIN MOSCOU FALTISCHEK, P.C.
                                 *Proposed Attorneys for Debtor*

                        By:   *s/ Sheryl P. Giugliano*
                                 Sheryl P. Giugliano
                                 Michael S. Amato
                                 1425 RXR Plaza
                                 East Tower, 15th Floor
                                 Uniondale, NY 11556-1425
                                 (516) 663-6600