UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:

HAL LUFTIG COMPANY, INC.,                                        Chapter 11 (Subchapter V)

                                Debtor.          Case No. 22-11617 (JPM)
-----------------------------------------------------------------------X
HAL LUFTIG COMPANY, INC.,

                            Plaintiff,

                                  Adv. Pro. No. 22-01176 (JPM)

v.

FCP ENTERTAINMENT PARTNERS, LLC,

                            Defendant.
-----------------------------------------------------------------------X

**FCP ENTERTAINMENT PARTNERS, LLC MEMORANDUM OF LAW IN
OPPOSITION TO DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 362(A)
AND 105(A) TO EXTEND THE AUTOMATIC STAY TO NON-DEBTOR HAL LUFTIG**

**LIPPES MATHIAS LLP**

*s/ John A. Mueller*
John A. Mueller, Esq.
Richard M. Scherer, Jr., Esq.
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
(716) 853-5100
jmueller@lippes.com
rscherer@lippes.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

LEGAL ARGUMENT ................................................................................................................ 5

   1.  Standard of Law.................................................................................................................. 5

   2.  Luftig is independently liable to FCP for the Final Judgment............................................ 6

   3.  The absence of a stay regarding FCP's enforcement of the Final Judgment against Luftig
       individually does not pose a serious threat to HLC's reorganization efforts...................... 9

      a.  Extending the stay to Luftig does not further the purpose of the Bankruptcy Code...... 10

      b.  Luftig has not established his absolute entitlement to indemnification from HLC ....... 12

      c.  The Debtor has not demonstrated immediate adverse consequence to the estate.......... 14

   4.  HLC has an adequate remedy at law................................................................................. 16

CONCLUSION.......................................................................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*A.H. Robins Co., Inc. v. Piccinin*,
    788 F.2d 994 (4th Cir. 1986) ...................................................................... passim

*CAE Industries Ltd. v. Aerospace Holdings Co.*,
    116 B.R. 31 (Bankr. S.D.N.Y. 1990) ........................................................... passim

*DeSouza v. PlusFunds Group, Inc.*,
    2006 WL 2168478 (S.D.N.Y. Aug. 1, 2006) ................................................. 7, 14

*Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*,
    333 F.3d 383 (2d Cir. 2003)........................................................................... 8, 9

*FCP Entertainment Partners v. Hal Luftig Company, Inc. and Hal Luftig*,
    AAA Case No. 01-19-0002-5183 ......................................................................... 2

*Fortier v. Dona Anna Plaza Partners*,
    747 F.2d 1324 (10th Cir. 1984) ........................................................................ 10

*General Motors Acceptance Corp. v. Yates Motor Co., Inc.*,
    283 S.E.2d 74 (Ga. Ct. App. 1981) ................................................................ 7, 10

*Gray v. Hirsch*,
    230 B.R. 239 (S.D.N.Y. 1999)......................................................................... 6, 14

*In re Adelphia Commc'n Corp.*,
    298 B.R. 49 (Bankr. S.D.N.Y. 2003) ................................................................... 5

*In re All Seasons Resorts, Inc.*,
    79 B.R. 901 (Bankr. C.D. Cal. 1987) ............................................................ 10, 12

*In re Anje Jewelry Co.*,
    47 B.R. 485 (Bankr. E.D.N.Y. 1983)................................................................. 10

*In re Crilly*,
    2020 WL 3549848 (W.D. Okla. June 30, 2020)................................................. 16

*In re Durr Mechanical Construction, Inc.*,
    604 B.R. 131 (Bankr. S.D.N.Y. 2019)............................................................... 13

*In re Johns-Manville Corp.*,
    26 B.R. 405 (S.D.N.Y. 1983)........................................................... 7, 11, 12, 13

*In re Metal Center, Inc.*,

31 B.R. 458 (D. Conn. 1983) ................................................................................. 7

*In re Nassau Cty. Strip Search Cases*,
    783 F.3d 414 (2d Cir. 2015) .......................................................................... 16

*In re Philadelphia Gold Corp.*,
    56 B.R. 87 (Bankr. E.D. Pa. 1985) ............................................................... 10

*In re Related Asbestos Cases*,
    23 B.R. 523 (Bankr. N.D. Cal. 1982) ............................................................ 11

*In re Third Eighty-Ninth Assocs.*,
    138 B.R. 144 (Bankr. S.D.N.Y. 1992) ............................................................. 5

*In re United Health Care Org.*,
    210 B.R. 228 (Bankr. S.D.N.Y. 1997) ...................................................... 13, 14

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*,
    2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014) ................................................. 6

*Mardice v. Ebony Media Operations, LLC*,
    2021 WL 146358 (S.D.N.Y. Jan. 15, 2021) ....................................... 5, 6, 12, 13

*Millard v. Developmental Disabilities Inst.*,
    266 B.R. 42 (Bankr. E.D.N.Y. 2001) ........................................................... 5, 6

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
    564 B.R. 192 (S.D.N.Y. 2016) ........................................................................ 6

*Provident Tradesmens Bank & Trust v. Patterson*,
    390 U.S. 102 (1968) ...................................................................................... 7

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003) .......................................................................... 6

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 6 (2d Cir. 1986) ......................................................................... 5, 10

*Thomson Kernaghan & Co. v. Glob. Intellicom, Inc.*,
    2000 WL 640653 (S.D.N.Y. May 17, 2000) .................................................... 7

*United States v. Victor Seitles*,
    106 B.R. 36 (Bankr. S.D.N.Y. 1989) ............................................................... 5

*Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*,
    945 F.Supp. 603 (S.D.N.Y. 1996) .................................................................. 7

**Statutes**

Bankruptcy Code 11 U.S.C. § 105............................................................................................. 5
Bankruptcy Code 11 U.S.C. § 362........................................................................................ 1, 16
Bankruptcy Code 11 U.S.C. § 362(a) ....................................................................................... 5


**Other Authorities**

New York Business Corporation Law Section 722(a)................................................................ 13


**Rules**

Fed. R. Civ. P. 62(b) ........................................................................................................ 1, 16, 17

FCP Entertainment Partners, LLC ("FCP") submits this memorandum of law, together with the Declaration of John A. Mueller (the "Mueller Dec."), dated December 9, 2022, and the Declaration of Warren Trepp (the "Trepp Dec."), dated December 8, 2022, filed simultaneously herewith in opposition of Hal Luftig Company, Inc.'s ("HLC" or the "Debtor") motion requesting an Order extending the automatic stay, pursuant to § 105(a) and 326 of Title 11 of the United States Code (the Bankruptcy Code"), to Hal Luftig, individually (the "Motion").

## PRELIMINARY STATEMENT

The present motion seeks to improperly extend the automatic stay under Bankruptcy Code § 362 to Luftig. HLC argues that the stay must be extended to Luftig "because he is the backbone of the Debtor's decades of success, and failure to do so immediately would jeopardize the Debtor's chances of a successful reorganization." Doc. 3, at p. 7. Debtor's argument, however, entirely misses the mark. As set forth below, the present situation does not amount to the sort of "special or unusual circumstances" warranting an extension of the automatic stay. HLC's motion seeks to prevent FCP from enforcing a $2,638,925.78 judgment against Luftig and HLC. As set forth below, the District Court has already confirmed the underlying arbitration award at issue and found HLC and Luftig to be jointly and severally liable. Any enforcement efforts against Luftig, who is independently liable to FCP, will not affect HLC's reorganization, nor will the absence of a stay on enforcement with respect to Luftig pose a serious threat to HLC's reorganization. Luftig has failed to establish that he is either: (i) entitled to absolute immunity and indemnification; or (ii) his personal assets and/or efforts are essential to the reorganization. Luftig also has an adequate remedy at law available to him; namely, he can obtain stay protection by either: (i) filing for bankruptcy; or (ii) providing a bond or other security, pursuant to Fed. R. Civ. P. 62(b) pending

his appeal of the Judgment at issue. Accordingly, for these reasons and as set forth below, HLC's motion should be denied.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The present action arises out of a certain arbitration captioned as *FCP Entertainment Partners v. Hal Luftig Company, Inc. and Hal Luftig*, AAA Case No. 01-19-0002-5183 (the "Arbitration"). The Arbitration hearing commenced on May 24, 2021, in New York City before Arbitrator Robert E. Donnelly, Counsel at Fox Rothschild in New York City with over forty (40) years of experience as an entertainment lawyer. The Arbitrator presided over the hearing related to liability, from May 24, 2021 through May 28, 2021.

On July 21, 2021, the Arbitrator issued his Interim Award (the "Interim Award") on liability and determined, *inter alia*, that the Agreement was not void and unreasonable as a matter of California law, that *Kinky Boots* qualified as an "Approved Project" and "Vested Project" as defined by the Agreement, and that HLC and Luftig were obligated to continue paying Kinky Boots income to FCP pursuant to the terms of the waterfall  provisions, which, in relevant part, afforded FCP 55% of future income. A copy of the Interim Award is attached to the Mueller Dec., as ***Exhibit A***. After the Interim Award was issued, counsel for HLC and Luftig raised, for the first time, the issue of the joint and several liability via email to the Arbitrator on October 20, 2021. A copy of the email is attached to the Mueller Dec., as ***Exhibit B***. The correspondence sought clarification of the Interim Award, inquiring whether the Arbitrator had intentionally stated that Luftig and HLC were both liable to FCP for breach. The Arbitrator invited a response from FCP, which was submitted on October 26, 2021. A copy of this email chain is attached to the Mueller Dec., as ***Exhibit C***. Thereafter, counsel for the parties submitted additional arguments to the

Arbitrator. These emails are attached to the Mueller Dec., as **Exhibit D** and **Exhibit E**. Thereafter,

on November 4, 2021, the Arbitrator issued an order on the dispute, holding:

> My Interim Order is correct as written. Both Respondents (i.e. Hal
> Luftig Company Inc and Hal Luftig as an individual) are
> ***individually and severally liable for the damages*** described in my
> Interim Order.

A copy of the November 4, 2021 email Order is attached to the Mueller Dec., as **Exhibit F**

(emphasis added).

Thereafter, On April 1, 2022, the Arbitrator issued the final award (the "Final Award"). A

copy of the Final Award is attached to the Mueller Dec. as **Exhibit G**. The Final Award resolved

all of the parties' disputes and, among other things, found that HLC and Luftig, ***jointly and***

***severally***, shall pay $2,638,925.78 to FCP.  *See id.*

On April 4, 2022, FCP filed its Petition to Confirm the Final Award in the United States

District Court for the Southern District of New York ("District Court"), bearing Civil Action No.

22-cv-02768-LAK ("SDNY Action No. 1"). On May 6, 2022, HLC and Luftig filed their

Opposition to the Petition. Simultaneous with the filing of the Opposition, on May 6, 2022, Luftig

filed his Petition to Vacate the Arbitration Award as a separate action in the District Court, bearing

Civil Action No. 22-cv-03697-LAK ("SDNY Action No. 2") (SDNY Action No.1 and SDNY

Action No. 2 collectively, the "SDNY Actions").

On May 19, 2022, FCP and Luftig each filed Amended Petitions in the SDNY Actions.

Luftig argued among other things that he could not be jointly and severally liable for the

$2,638,925.78 awarded to FCP in the Final Award. Luftig's arguments were briefed extensively

before the District Court and on October 26, 2022, the Court entered its Memorandum and Order

(the "Order") (SDNY Action No. 1 Doc. 33; SDNY Action No 2, Doc. 28) granting FCP's

Amended Petition to Confirm the Arbitration Award and denying Luftig's Petition to Vacate the

Arbitration Award. A copy of the District Court's Order is attached to the Mueller Dec. as ***Exhibit H***.

In the Order, the District Court spent significant time analyzing Luftig's individual liability, noting that "the only notable legal question before the Court is whether the arbitrator's finding that both Mr. Luftig himself and his loan-out company 'breached the agreement' and thus are 'jointly and severally liable' for the $2,638,925.78 in compensatory damages warrants vacatur under the FAA" Mueller Dec., Ex. H, at p. 6. Ultimately the District Court ruled in favor of FCP finding that Luftig failed to sustain the "heavy burden" in trying to vacate the Final Award. *See id.*, at p. 7. The District Court reasoned as follows:

> Here, the Court faces no difficulty in inferring "a ground" on which the arbitrator's decision to award compensatory damages for beach in an amount for which both Mr. Luftig and the loan-out company are jointly and severally liable is proper. ***It is perfectly clear form the Final Award and the documents it incorporates that (1) Hal Luftig and HLC both are liable for damages***; and (2) those damages flow from the failure to pay FCP its share of post-termination *Kinky Boots* income in accordance with the schedule set out in the 2007 Agreement. ***Even if Mr. Luftig never was a formal party to the contract, the arbitrator's award leaves no doubt that he bears sufficient responsibility for that breach so as to support liability sounding in tort, if not on other theories.***

Order, at pp. 7-8 (emphasis added).

After the District Court entered its Order, on November 2, 2022, the clerk entered a Judgment in favor of FCP and against HLC and Luftig. Thereafter, on November 29, 2022, Luftig filed his notice of appeal from the Order and Judgment. On December 7, 2022, the District Court entered an Amended Final Judgment (the "<u>Final Judgment</u>") which clarified the specific dollar amount awarded to FCP, incorporated a letter of direction, and set out how future revenue owed to FCP will be determined pursuant to the Final Award. A copy of the District Court's Final Judgment is attached to the Mueller Dec. as ***Exhibit I***.

4

HLC did not appeal the District Court's decision, but instead, commenced this bankruptcy proceeding. *See* Doc. 2-1, at ¶2. Now, HLC seeks to extend the automatic stay to Luftig, individually, to stave off FCP's collection efforts of the Final Judgment. For the reasons set forth below, HLC's Motion should be denied.

## **LEGAL ARGUMENT**

### 1.      **Standard of Law**

It is well-settled that the automatic stay under 11 U.S.C. § 362(a) is limited to debtors and does not encompass non-bankrupt co-defendants. *Mardice v. Ebony Media Operations, LLC*, 2021 WL 146358, at *3 (S.D.N.Y. Jan. 15, 2021) (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)). Proceedings against the debtor are automatically stayed "to allow the debtor to focus all attention on reorganization efforts without the distraction of having to defend against outside litigation." *Millard v. Developmental Disabilities Inst.*, 266 B.R. 42, 44 (Bankr. E.D.N.Y. 2001). Where circumstances exist to support the extension of the automatic stay to non-bankrupt defendants, the Bankruptcy Code allows a court to do so pursuant to 11 U.S.C. § 105. *Id.* (citing *United States v. Victor Seitles*, 106 B.R. 36, 40 (Bankr. S.D.N.Y. 1989)). The movant bears the burden of demonstrating the circumstances exist to justify the extension of the stay. *See In re Adelphia Commc'n Corp.*, 298 B.R. 49, 54 (Bankr. S.D.N.Y. 2003) (citing *In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (Bankr. S.D.N.Y. 1992)).

Extending the automatic stay to a non-debtor is within the Court's discretion but should be considered in conjunction with the directive that any such extension is the exception rather than the rule. *Millard*, 266 B.R. at 44-45. Extending the automatic stay to a non-debtor is generally disfavored without a showing of some unusual or special circumstance. *Id.* The Second Circuit has extended the automatic stay to non-debtors only in unusual, narrow circumstances. *Mardice*, 2021

WL 146358, at *4; *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

Courts will consider the following factors when deciding whether to exercise such discretion

include: (1) whether continuation of outside litigation would so distract individuals important to

the reorganization process as to impede the reorganization effort; (2) whether extension of the stay

would work a hardship on plaintiffs by giving "unwarranted immunity' to solvent defendants; and

(3) whether or not the non-bankrupt party seeking the stay is independently liable to the plaintiff.

*Millard*, 266 B.R. at 44 (citing *CAE Industries Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32-

33 (Bankr. S.D.N.Y. 1990)). Said another way, an extension may be proper where a claim against

the non-debtor will have a serious and immediate adverse economic consequence for the debtor's

estate. *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 564 B.R. 192,

194 (S.D.N.Y. 2016) (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 297 (2d Cir. 2003));

*see also Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2014 WL 4783008, at *3

(S.D.N.Y. Sept. 25, 2014)) (requiring a serious threat to the debtor's reorganization efforts to grant

an extension of the automatic stay to a non-debtor co-defendant); *Gray v. Hirsch*, 230 B.R. 239,

243 (S.D.N.Y. 1999) ("[C]ourts in this district have stayed actions against non-debtor officers and

principals of debtor corporations, but only where the stay actions would have posed a *serious* threat

to the debtors' reorganization efforts.") (emphasis added).

Here, none of the factors support an extension of the stay and the Debtor's Motion should

be denied.

## 2.    Luftig is independently liable to FCP for the Final Judgment

When a non-debtor co-defendant is independently liable as a joint tortfeasor, no unusual

circumstances are present, and the protection afforded to the debtor under the automatic stay

provision does not extend to the non-debtor. *Mardice*, 2021 WL 146358, at *3 (quoting *Thomson*

6

*Kernaghan & Co. v. Glob. Intellicom, Inc.*, 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000));
*Robins*, 788 F.2d at 999 (excluding from the 'unusual situation' exception those cases in which
the non-bankrupt co-defendant is independently liable to the creditor). This limitation on the
"unusual situation" exception has been adopted in the Southern District of New York and by
numerous other courts. *See, e.g., Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*,
945 F.Supp. 603, 608 (S.D.N.Y. 1996); *CAE Industries Ltd.*, 116 B.R. at 32; *Robins*, 788 F.2d at
999; *In re Johns-Manville Corp.*, 26 B.R. 405, 411 (S.D.N.Y. 1983); *In re Metal Center, Inc.*, 31
B.R. 458, 462 (D. Conn. 1983). Said another way, where liability could rest upon either
defendant's breach of duty, there is no basis to extend the automatic stay to a non-debtor co-
defendant. *DeSouza v. PlusFunds Group, Inc.*, 2006 WL 2168478, at *3 (S.D.N.Y. Aug. 1, 2006);
*CAE Industries Ltd.*, 116 B.R. at 33. Here, Luftig is individually liable so the Debtor's Motion
should be denied.

The present case is analogous to *CAE Industries Ltd.*, in which the court denied the
extension of an automatic stay to the corporate debtor's former CEO, Chairman and Director. 116
B.R. at 33-34. While the non-debtor co-defendant played a significant role in the transaction
underlying the litigation, the court found that the claims against the co-defendant were based upon
his individual activity. *Id.* at 33. Given that the plaintiff could have pursued its tort claims solely
against the non-debtor, the court did not find any "special" or "unusual circumstances" warranting
an extension of the automatic stay. *Id.* (citing *Provident Tradesmens Bank & Trust v. Patterson*,
390 U.S. 102 (1968) (finding joint tortfeasors are not necessary parties); *General Motors
Acceptance Corp. v. Yates Motor Co., Inc.*, 283 S.E.2d 74, 76 (Ga. Ct. App. 1981) (refusing to
extend stay to non-debtor co-defendant, since defendants were jointly and severally liable for
plaintiff's damages)).

There is no question that Luftig as an individual is liable for the damages described in the Final Judgment. The District Court confirmed that Luftig "breached the agreement" and is jointly and severally liable for the compensatory damages owed to FCP. Mueller Dec., at Ex. O, pp.7-8. The Final Award, Order and Final Judgment make clear that Luftig himself "bears sufficient responsibility for [the] breach so to support liability sounding in tort, if not on other theories" even if he was never a formal party to the agreement. *Id.*

HLC and Luftig previously raised these issues in filing their Opposition to FCP's Petition to Confirm the Arbitration Award, as amended, in SDNY Action No. 1 and Luftig's Petition to Vacate the Arbitration Award, as amended, in the SDNY Action No. 2. The District Court's grant of FCP's Amended Petition to Confirm the Arbitration Award in the SDNY Actions makes clear that HLC and Luftig failed to meet the high burden required to vacate the Final Award. "[T]he Court does not believe Luftig has sustained the heavy burden that attaches in this posture." Order, at p. 7. "It is perfectly clear from the Final Award and the documents it incorporates that (1) Hal Luftig and HLC **both** are liable for damages[.]" *Id.* at 7-8 (emphasis added). "[T]he Final Award's meaning and effect are entirely clear and grounded in colorable legal justification." *Id.* at 8. Both the Arbitrator and District Court concluded that Luftig *and* HLC are liable for FCP's damages. Accordingly, there is (i) no question that Luftig is independently liable; and (ii) no special circumstances exist so as to justify an extension of the automatic stay.

Given that HLC and Luftig failed to meet the heavy burden required to vacate the Final Award in the District Court, the likelihood of Luftig's success on appeal is questionable. The Second Circuit reviews a district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions. *Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). A petitioner requesting vacatur of an arbitration award "bears the

heavy burden of showing that the award falls within a very narrow set of circumstances[.]" *Id.* Further, the Federal Arbitration Act ("FAA") permits vacatur in only four (4) enumerated situations, which all involve corruption, fraud, or some impropriety on the part of the arbitrators. *Id.*

A petitioning party can try to show a 'manifest disregard' for the law which must be plainly evident on the face of the award, but the Second Circuit's review under that doctrine is "severely limited" and "highly deferential to the arbitral award." *Id.* at 389. As such, judicial findings of manifest disregard of the law are uncommon. *Id.* at 389. "Our reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Id.*

Again, the District Court unequivocally found that HLC and Luftig failed to meet their burden to justify vacatur of the Final Award, under the doctrine of manifest disregard or any of the enumerated circumstances pursuant to the FAA. As the Second Circuit on appeal will again review the entire vacatur analysis without any possible additional allegations of corruption, fraud, partiality, misconduct or manifest disregard, the likelihood of reversal, if any, is exceptionally slim. The circumstances are insufficient to justify an extension of the stay to Luftig as the Final Award, Order and Final Judgment found him independently liable for FCP's damages.

**3.      The absence of a stay regarding FCP's enforcement of the Final Judgment against Luftig individually does not pose a serious threat to HLC's reorganization efforts**

HLC broadly overstates the implications of not extending the automatic stay to Luftig. "If an extension of the stay 'would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent co-defendants,' which would contravene the purposes underlying the

automatic stay, then the stay should be denied." *CAE Industries*, 116 B.R. at 32 (quoting *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984)); *see also In re All Seasons Resorts, Inc.*, 79 B.R. 901 (Bankr. C.D. Cal. 1987) (denying extension of stay to solvent co-defendant officers of debtor corporation); *Butler*, 803 F.2d at 66 (denying extension of stay to solvent partners of bankrupt partnership); *In re Anje Jewelry Co.*, 47 B.R. 485, 487 (Bankr. E.D.N.Y. 1983) (denying extension of stay to president of debtor corporation); *In re Philadelphia Gold Corp.*, 56 B.R. 87 (Bankr. E.D. Pa. 1985) (denying extension of stay to chief operating officer and major shareholder of debtor corporation); *General Motors*, 283 S.E.2d at 76 (denying extension of stay to joint tortfeasors).

### a. *Extending the stay to Luftig does not further the purpose of the Bankruptcy Code*

HLC relies on inapposite case law to argue that enforcing the Final Judgment against Luftig (a non-debtor) poses a serious threat to the reorganization. HLC cites *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), to support the idea that FCP enforcing the Final Judgment against Luftig will have adverse economic consequences for HLC's reorganization. (Doc. 3, at pp. 4-5). HLC argues that because Luftig "must be focused on working on the Debtor's existing projects and identifying and pursuing new opportunities which might flow from the Debtor's legacy productions to generate revenue to fund a plan of reorganization," unusual circumstances exist so as to justify the rare exception of extending the automatic stay. (Doc. 3, at pp. 4-5, 7). However, the facts in this case are distinguishable from *Robins*. In *Robins*, there were thousands of product liability suits against the debtor and co-defendants, which the court described as overwhelming and "an avalanche of actions filed in various state and federal courts throughout the United States." *Robins*, 788 F.2d at 996.

The *Robins* court granted the relief requested as it furthered the purpose of the automatic stay. *Id.* at 1012 (considering the magnitude of the 5,000+ pending lawsuits relative to the resources of the corporation, pre-trial costs, and the "realities of modern litigation") ("This purpose [of whether a fair reorganization of the debtor can be achieved] may well be completely thwarted if the energies of the debtor's executives and officers are initially diverted by, and the resources of the debtor are dissipated in the expenses of litigating, the trial of thousands of personal injury suits in courts throughout the land spread over an interminable period of time"). *See also In re Johns-Manville*, 26 B.R. at 420 (extending the stay where over 11,000 lawsuits were pending against the debtor and 250 lawsuits were pending against key officers, directors and employees) ("[T]he massive drain on time and energy at this critical hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization.").

As noted above, the facts in this care are more akin to the situation in *CAE Industries Ltd.* In *CAE Industries Ltd.*, the court determined that extending the stay to "only one action against a single former corporate [executive]" did not further the purpose of the automatic stay. 116 B.R. at 34 (citing *In re Related Asbestos Cases*, 23 B.R. 523, 528 (Bankr. N.D. Cal. 1982) ("[S]omething more than the mere fact that one of the parties to this lawsuit has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against non-bankrupt parties."). The *CAE Industries Ltd.* court distinguished the *Robins* and *Johns-Manville* cases based on the sheer magnitude of litigation pending against those defendants and held that continuation of the action as against the non-debtor co-defendant had no material effect upon the reorganization efforts even at the pretrial stage. *Id.*

11

The facts in this case are even further distinguishable from *Robins* and *Johns-Manville* in that there is already the Final Judgment for which Luftig is independently liable. There are no mounting discovery and pretrial costs or "realities of modern litigation" facing Luftig. The Final Award has been entered by the District Court and there is little to no likelihood of Luftig's success on appeal. Luftig is not facing thousands of pending lawsuits, but only the collection efforts relative to FCP's Final Judgment against him. Further, the heavy lifting of litigation has long been over and there are little to no distractions of litigation that Luftig will be tasked with. Accordingly, there are no "special" or "unusual" circumstances that justify extending the automatic stay to Luftig.

### b. Luftig has not established his absolute entitlement to indemnification from HLC

Luftig argues that HLC is the "true judgment debtor" because he is entitled to indemnification for the Final Judgment. However, a mere opportunity to seek indemnification is insufficient grounds to extend the automatic stay. *Mardice*, 2021 WL 146358, at *5. In *Mardice*, the court held that the non-debtor defendants did not show that continuing the action would seriously threaten the resolution of the debtor's bankruptcy proceeding or create an immediate adverse consequence for the debtor based on the opportunity for indemnification. *Id.* The court found that the failure to produce copies of the alleged indemnification agreements that would establish absolute entitlement to indemnification was fatal to the request for an extension of the automatic stay. *Id.* "Although Defendants assert that [non-debtors] would seek indemnification from [debtor], they do not produce evidence of the individual Defendants' indemnification agreements . . . and, in any case, the possibility that the individual [non-debtors] would be indemnified by [debtor] alone is insufficient grounds for extension of the automatic stay. *Id. See also CAE Industries*, 116 B.R. at 33 (citing *In re All Seasons*, 79 B.R. at 904) ("Although there is

12

a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification pursuant to debtor's by-laws, the magnitude of harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in *Robins* and *Johns-Manville*.").

HLC relies on *In re Durr Mechanical Construction, Inc.*, 604 B.R. 131 (Bankr. S.D.N.Y. 2019) and *In re United Health Care Org.*, 210 B.R. 228 (Bankr. S.D.N.Y. 1997) for the proposition that there is "identity between the debtor and the third party defendants" where the third party is "entitled to absolute immunity by the debtor on account of any judgment that might result against it in the case," thus justifying an extension of the automatic stay to Luftig. (Doc. 3 at p. 6). However, HLC and Luftig have not offered any evidence that Luftig is entitled to absolute immunity and indemnification from HLC.

HLC cites a permissive provision of the New York Business Corporation Law, specifically Section 722(a), and offers a conclusory statement that the "Debtor's applicable corporate documents" allow for indemnification. (Doc. 3, at p. 9). As part of the Proof of Claim filed by Luftig in the Debtor's bankruptcy proceeding, Luftig claims that the basis for "Debtor's obligation to indemnify [Luftig]" is based on "the Debtor's bylaws and applicable New York State law." Notably, Luftig has not produced said bylaws or any "applicable corporate documents" that demonstrate he is entitled to absolute indemnity from HLC. As the possibility of a judgment "end[ing] up with a claim for contribution and/or indemnity" is insufficient to justify extending the stay, Luftig's conclusory assertions regarding a mere possibility of indemnification add no weight to his argument. *See Mardice*, 2021 WL 146358, at *6.

Further, the possibility of future indemnity is of no consequence to FCP and the balance of equities does not favor extending the automatic stay to Luftig on these grounds. Since HLC and

Luftig were found jointly and severally liable for the Final Judgment, indemnity falls largely outside of FCP's involvement with the parties and has no effect on the enforcement of the Final Judgment. The mere possibility of a future indemnification claim does not support extension of the automatic stay to Luftig, and the Motion should be denied.

### c. *The Debtor has not demonstrated immediate adverse consequence to the estate*

Where a non-debtor co-defendant's personal assets or efforts have a material effect on the debtor's reorganization process, a court may find that the debtor's estate would be adversely affected in the absence of extending the automatic stay. *See Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999). "Vague indications of potential distraction, and limited participation in and discussions concerning reorganization, do not represent 'danger of imminent, irreparable harm to the estate or the debtor's inability to reorganize, and simply are not enough to justify extending the automatic stay[.]'" *DeSouza*, 2006 WL 2168478, at *2 (citing *United Health Care,* 210 B.R. at 233). The *DeSouza* court found that the distraction of defending oneself in active litigation from the debtor's reorganization process was insufficient to extend the automatic stay to non-debtors as they did not prove it would have a "material effect" upon the reorganization. *Id.* Similarly, in *United Health Care*, the automatic stay was extended to a non-debtor co-defendant where the success of the debtor's reorganization was contingent upon the non-debtor's contribution of personal assets and efforts. *Id.*

To support the argument that Luftig is essential to a successful reorganization, HLC asserts that Luftig's personal efforts, relationships and reputation will eventually generate revenue to fund a plan of reorganization. (Doc. 3, at pp. 7-8).  HLC further argues that Luftig cannot deal with enforcement and collection efforts relative to the Final Judgment if he is to continue working and focusing on HLC's "continued success." (Doc. 3, at pp. 7-8). Notably, HLC does not argue that

Luftig will contribute personal assets to the reorganization process, much less provide any personal efforts beyond saving face in the professional arena.

HLC makes the tenuous argument that Luftig will have to spend "most of his time dealing with judgment enforcement," thus keeping him from attending meetings and rehearsals. (Doc. 3, at p. 8). As the Southern District has held, these assertions are insufficient to demonstrate a risk of imminent and irreparable harm to the HLC estate or its ability to reorganize.

Further, it appears Luftig's efforts largely relate to pursuing new projects and opportunities that will **not** benefit the Debtor's estate. As set out in the Declaration of Warren Trepp, Luftig has taken steps to ensure that new theatrical projects are produced and owned by an entity other than the Debtor. Trepp Dec., at ¶ 10. Luftig even created a new entity to hold his ownership interest in his next project, a Broadway adaptation of *Life of Pi. See id.* at ¶¶ 11, 15. This new entity, Life of Pi – Hal Luftig, LLC, was formed as a Delaware limited liability company on May 5, 2022, just 34 days after the Final Award was issued. *Id.*

Life of Pi – Hal Luftig, LLC is notably absent from the Debtor's Form 202 Schedule. *Id.* at ¶ 12. The Debtor does not have any ownership interest in new opportunities or any new income associated with the *Life of Pi. See id.* at ¶ 16. Thus, Luftig cannot possibly be spending all of his time focusing the Debtor's business and its "continued success." *Id.* at ¶ 17; Doc. 3, at p. 7-8. Instead of spending time and efforts on the Debtor's reorganization, Luftig is pursuing opportunities and income for other non-debtor entities – a blatant attempt to insulate future income from FCP's Final Judgment. Trepp Dec. at ¶ 23. This also raises questions regarding HLC's intent in filing bankruptcy, as any reorganization plan may be meaningless without substantial future income from new productions.

15

Per above, the absence of a stay with respect to Luftig will not inhibit or impede HLC's reorganization efforts and the Motion should be denied.

### 4.    HLC has an adequate remedy at law

HLC argues that "only an extension of the automatic stay pursuant to § 362 of the Bankruptcy Code and a temporary, preliminary and permanent injunction staying enforcement of the Final Award and Clerk's Final Judgment as against Mr. Luftig will provide the appropriate relief required under these circumstances." (Doc. 3 at p. 20). This statement completely disregards Luftig's options to obtain a stay through alternate means.

Fed. R. Civ. P. 62(b) allows for a party to "obtain a stay by providing a bond or other security." This is a clear and simple mechanism for a party to stay enforcement of a judgment while pursuing an appeal, but it requires the appellant to give the appellee appropriate security in order to preserve the financial status quo. *See In re Nassau Cty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015). A stay bond protects a successful appellee by providing compensation without having to wait to collect on the underlying judgment, while also protecting the appellant by suspending payment until the conclusion of the appeal. Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary* 62 (2022). Given that Fed. R. Civ. P. 62(b) provides a method to stay enforcement while maintaining the status quo and protecting both parties, HLC and Luftig have an adequate remedy at law.

The Motion is simply a half-hearted attempt to circumvent the proper procedure of posting a bond or other security. *See In re Crilly*, 2020 WL 3549848, at *7-*10 (W.D. Okla. June 30, 2020) (denying debtors' motion to extend the automatic stay and finding a presumption of bad faith as to all creditors in part due to debtors' manipulation of the Bankruptcy Code for the purpose of staying collection efforts without the necessity of posting an appeal bond or being required to pay

anything towards the judgment). If Luftig wishes to stay enforcement of the Final Judgment, he should do so in accordance with Fed. R. Civ. P. 62(b). HLC and Luftig have an adequate remedy at law, so the Motion should be denied.

## **CONCLUSION**

There are no special or unusual circumstances to justify extension of the automatic stay to Luftig, so FCP respectfully requests that this Court deny the Motion and dismiss this Adversary Proceeding with prejudice.

Dated: December 9, 2022
       Buffalo, New York

                      **LIPPES MATHIAS LLP**

                      *s/ John A. Mueller*
                      John A. Mueller, Esq.
                      Richard M. Scherer, Jr., Esq.
                      50 Fountain Plaza, Suite 1700
                      Buffalo, NY 14202
                      (716) 853-5100
                      jmueller@lippes.com
                      rscherer@lippes.com